# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# WESTERN DIVISION

| | |
|---|---|
| THERESA ANN DAVIS,<br><br>  Plaintiff,<br><br>vs.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br><br>  Defendant. | No. C06-4106-PAZ<br><br>**MEMORANDUM OPINION AND ORDER** |

This matter is before the court on judicial review of the defendant's final decision denying the plaintiff's applications for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 401 *et seq.*, and supplemental security income benefits under Title XVI of the Act, 42 U.S.C. § 1381 *et seq.*, for the period from January 24, 2002, through October 30, 2003. The plaintiff Theresa Ann Davis protectively filed her applications on January 6, 2003. She alleges she has been disabled since January 24, 2002, due to problems with her back, knees, and arms, as well as epilepsy.

Davis's applications were denied initially and on reconsideration. She requested a hearing, and a hearing was held on November 5, 2003, before Administrative Law Judge ("ALJ") Lauren R. Mathon. Davis was represented by counsel at the hearing, and Davis and her husband both testified at the hearing. No Vocational Expert ("VE") testified at the hearing. Instead, subsequent to the hearing, the ALJ submitted written interrogatories to VE Carma Mitchel. *See* R. 30-35. On September 21, 2004, the ALJ found Davis was disabled as of October 31, 2003, but she was not disabled during the period January 24, 2002, through October 30, 2003. Davis appealed the ALJ's decision, and on October 27, 2006, the Appeals Council of the Social Security Administration denied her request for review, making the ALJ's decision the final decision of the Commissioner. Subsequently,

the Appeals Council reviewed additional evidence submitted by the plaintiff, but the Appeals Council found no change was warranted in its previous action. *See* Plaintiff's Supplemental Transcript, Doc. No. 21, at 635-36.

Davis filed a timely Complaint in this court, seeking judicial review of the ALJ's ruling. On January 29, 2007, with the parties' consent, Judge Mark W. Bennett transferred the case to the undersigned for final disposition and entry of judgment. The parties have briefed the issues, and the matter is now fully submitted and ready for review.

The fighting issue in this case is the onset date of the plaintiff's disability. The ALJ found Davis to be disabled as of October 31, 2003. Davis claims she became disabled as of January 24, 2002. Although the parties agree on the underlying facts, *see* Doc. No. 27 at 2, they differ regarding the appropriate method for the ALJ to determine the onset date of Davis's disability under Social Security Ruling ("SSR") 83-20, 1983-1991 Soc. Sec. Rep. Serv. 49, 1983 WL 31249 (1983).[1] The Commissioner seeks remand for further proceedings, arguing neither Davis's claimed onset date, which coincides with her last day of work, "nor the ALJ's onset finding is supportable by the record as it stands." Doc. No. 27 at 5. The plaintiff resists remand, arguing, among other things, that the record supports her claim that she became disabled as of her last day of work.

SSR 83-20 sets forth factors an ALJ must consider in determining the onset date of disability, a determination the Social Security Administration ("SSA") has described as "critical." SSR 83-20, *Introduction*. *See Blea v. Barnhart*, 466 F.3d 903, 909 (10th Cir. 2006) (SSR 83-20 "sets forth an analytical framework for assessing the date of onset for a disability of traumatic or non-traumatic origin.") Once published, SSR 83-20 was "'binding on all components of the Social Security Administration,'" including ALJs.

---

[1] Given the limited scope of the issue before the court in this case, the court is at a loss to determine why Davis's counsel summarized Davis's medical history from 1976 through 2006 in Davis's opening brief. *See* Doc. No. 24. Counsel is alerted that the court will take this into consideration when considering a motion for attorney fees.

*Grebenick v. Chater*, 121 F.3d 1193, 1200 (8th Cir. 1997) (quoting 20 C.F.R. § 422.406(b)(1) (1996); citing *Heckler v. Edwards*, 465 U.S. 870, 873 n.3, 104 S. Ct. 1532, 1534 n.3, 79 L. Ed. 2d 878 (1984)); *Blea, supra*.

In the *Policy Statement* underlying SSR 83-20, the SSA stated as follows:

> The onset date of disability is the first day an individual is disabled as defined in the [Social Security] Act and the regulations. Factors relevant to the determination of disability onset include the individual's allegation, the work history, and the medical evidence. These factors are often evaluated together to arrive at the onset date. However, the individual's allegation or the date of work stoppage is significant in determining onset only if it is consistent with the severity of the condition(s) shown by the medical evidence.

1983 WL 31249 at *1.

The SSA went on to describe these factors in more detail, as follows:

> In disabilities of nontraumatic origin, the determination of onset involves consideration of the applicant's allegations, work history, if any, and the medical and other evidence concerning impairment severity. The weight to be given any of the relevant evidence depends on the individual case.
>  1. Applicant Allegations
> The starting point in determining the date of onset of disability is the individual's statement as to when disability began. . . .
>  2. Work History
> The day the impairment caused the individual to stop work is frequently of great significant in selecting the proper onset date. . . .
>  3. Medical and Other Evidence
> Medical reports containing descriptions of examinations or treatment of the individual are basic to the determination of the onset of disability. The medical evidence serves as the primary element in the onset determination. . . . Determining the proper onset date is particularly difficult, when, for example, the alleged onset and the date last worked are far in the past and

> adequate medical records are not available. In such cases, it will be necessary to infer the onset date from the medical and other evidence that describe the history and symptomatology of the disease process. . . .
>
> In determining the date of onset of disability, the date alleged by the individual should be used if it is consistent with all the evidence available. When the medical or work evidence is not consistent with the allegation, additional development may be needed to reconcile the discrepancy. However, the established onset date must be fixed based on the facts and can never be inconsistent with the medical evidence of record.

*Id*. at *2. *See Willbanks v. Sec'y of H.H.S.*, 847 F.2d 301, 304 (6th Cir. 1988) (SSR 83-20 "demands that the claimant's claimed onset date be adopted if it is consistent with all the evidence available").

The SSA explained that when the medical evidence does not establish the precise onset date, the ALJ may "infer that the onset of a disabling impairment(s) occurred some time prior to the date of the first recorded medical examination, e.g., the date the claimant stopped working." SSR 83-20, 1983 WL 31249 at *3. When the onset date must be inferred, the ruling directs the ALJ to "call on the services of a medical advisor," and to secure additional medical evidence if necessary. *Id*. An inference may be required, for example, in the case of a slowly-progressing impairment, or when an impairment began before the date of the first recorded medical examination. *See Blea*, 466 F.3d at 900. Lay evidence will be considered in determining the onset date, "to the degree it is not contrary to the medical evidence of record." SSR 83-20, 1983 WL 31249 at *3.

The ALJ should consider medical evidence in light of the medical presumptions that reasonably can be made about the course of the condition. "The onset date should be set on the date when it is most reasonable to conclude from the evidence that the impairment was sufficiently severe to prevent the individual from engaging in [substantial gainful

4

activity] (or gainful activity) for a continuous period of at least 12 months or result in death. Convincing rationale must be given for the date selected." *Id.*

In this case, the ALJ found Davis to have medically-determinable impairments consisting of "status post laminectomy, facetectomy, and foraminotomy; back pain; left knee pain; depression; and borderline intellectual functioning," but she further found these impairments, singly or in combination, did not meet Listing level. She then found that although Davis's impairments reasonably could have caused the symptoms Davis alleged, Davis's subjective allegations of pain and limitations were not credible for the period from January 24, 2002, through October 30, 2003. The ALJ reached separate conclusions regarding Davis's residual functional capacity for that period, and for the period beginning October 31, 2003. She found that up until October 30, 2003, Davis retained the ability to lift and carry twenty pounds occasionally and ten pounds frequently; sit for about six hours and stand/walk for at least two hours in an eight-hour day; and climb, balance, stoop, kneel, crouch, and crawl occasionally; with work around hazards and at unprotected heights to be avoided. She found Davis "had no other exertional or non-exertional limitations," and Davis was limited to unskilled work involving simple, repetitive work tasks. For the period beginning October 31, 2003, the ALJ found Davis retained the ability to sit for about six hours and stand/walk for about two hours in an eight-hour day, with the caveat that she be able to change positions frequently; lift and carry twenty pounds occasionally and ten pounds frequently; and climb, balance, stoop, kneel, crouch, and crawl occasionally; with work around hazards and at unprotected heights to be avoided. She further found Davis would be limited to unskilled work involving simple, repetitive work tasks, but Davis would be unable to maintain a regular work schedule due to significant levels of pain.

These RFC determinations differ in two respects. The ALJ found that beginning October 31, 2003, Davis would require the ability to change positions frequently, and

Davis would be unable to maintain a regular work schedule due to significant levels of pain. The record does not contain substantial evidence to support the ALJ's conclusion that these restrictions began on that date. *See Page v. Astrue*, 484 F.3d 1040, 1042 (8th Cir. 2007) (court reviews ALJ's decision to determine whether ALJ applied correct legal standards, and whether factual findings are supported by substantial evidence on the record as a whole; "Substantial evidence is relevant evidence which a reasonable mind would accept as adequate to support the Commissioner's conclusion.") (citations, internal quotations marks omitted). There is no evidence that Davis's condition suddenly changed on October 31, 2003. Indeed, the court finds the medical evidence supports Davis's contention that she became disabled on the last day she worked.

Davis is was born in 1957. She is 5'4" tall and weighs about 287 pounds. She stutters markedly, and has a functional IQ of between 71 and 75, which is at the bottom of the borderline range of intellectual functioning. She completed high school but was in special education classes, and she has difficulty with both reading and writing. She has difficulty gripping objects, and she has daily headaches. The ALJ noted at the hearing that Davis appeared to be extremely uncomfortable. The ALJ also noted that Davis rocked from side to side during the questioning. Davis explained the rocking sometimes helps her get her mind off of her back pain.

From 1991 to January 2002, Davis worked consistently, with indexed earnings of $7,068.67 in 1991; $13,020.53 in 1992; $13,490.60 in 1993; $14,620.13 in 1994; $18,606.19 in 1995; $16,940.04 in 1996; $12,974.63 in 1997; $16,245.54 in 1998; $18,696.80 in 1999; $16,749.29 in 2000; $20,706.04 in 2001; $7,313.66 in 2002.

Davis injured her back at work in March 1999, and again in August 1999. After the August 1999 injury, x-rays showed degenerative changes at L4-5 and L5-S1. When conservative treatment failed to alleviate her pain, Davis underwent disk decompression and fusion surgery in June 2000, involving placement of bilateral pedicle screw

instrumentation. She was released to return to work on August 29, 2000, with restrictions of no bending at the waist and no lifting over twenty pounds. She continued to have follow-up visits, and on January 31, 2001, her doctor indicated she was working up to eleven hours per day on a variable schedule. Davis continued to complain of low back pain and intermittent left leg pain, worse when she was on her feet for more than one-and-a-half to two hours. The doctor indicated Davis had "definite persistence of soft tissue pain," and he opined she would have residual pain. He released Davis to continue working with a thirty-pound lifting limitation and no bending at the waist. (R. 314)

Davis was referred for a functional capacity evaluation ("FCE"), which took place on February 13, 2001. She was unable to complete the entire FCE, which was stopped secondary to Davis's complaints of pain and her responses to testing. (R. 356) Davis was noted to demonstrate signs of significant deconditioning in her upper and lower extremities and trunk. She walked without any assistive device, but with a very slow and deliberate gait pattern. She exhibited an antalgic gait pattern on the left, and decreased reciprocal movement patterns of both upper and lower extremities, but her movement patterns were noted to improve significantly with distraction. Overall, Davis exhibited inconsistent effort and the results of her testing were considered to be invalid. The evaluator completed an estimated FCE from his observation and partial testing of Davis that suggested she would be limited to sedentary work, with frequent sitting, and only occasional standing and walking.

On March 21, 2001, Davis's doctor determined that Davis had reached maximum medical improvement, and he rated Davis with "an 18% permanent partial impairment to the body as a whole," based on her one-level disc decompression and fusion with residual pain and decreased movement on flexion/extension and lateral flexion. (R. 402) On April 9, 2001, the doctor indicated that although Davis was released to work an eleven or

eleven-and-a-half hour shift, she should be "free to sit or stand as she tolerates," with "no specific restriction on sitting or standing." (R. 902)

As of July 2001, Davis was working at a light-duty position that allowed her to sit and stand, but not always at her choice. On some days, she would be required to sit for one hour at a time for a total of six to seven hours, and on other days, her work would require standing for thirty minutes at a time for a total of four to five hours. She underwent a private vocational evaluation, and the evaluator found that outside of Davis's current employment, at which accommodations were being made for her, Davis was "reasonably unemployable. By January 2002, Davis was doing only light-duty work, and she had a special chair with a back support that she used at work. She was laid off on January 24, 2002.

The record evidence reasonably establishes that the only way Davis continued working after her back surgery was due to accommodations made for her by her employer. The court finds the ALJ failed to acknowledge the significance of this fact, and failed to provide a convincing rationale for her decision establishing Davis's onset date as October 31, 2003. The Commissioner concedes this point, but argues the record is inconclusive regarding Davis's disability onset date. The court disagrees. Based on the evidence of record, Davis's last day of employment is "the date when it is most reasonable to conclude . . . that the impairment was sufficiently severe to prevent [Davis] from engaging in [substantial gainful activity] (or gainful activity) for a continuous period of at least 12 months[.]" SSR 83-20, 1983 WL 31249 at *3. Accordingly, the record fails to contain substantial evidence supporting the ALJ's decision that Davis's disability did not begin until October 31, 2003.[2]

---

[2]Having so found, the court does not reach Davis's arguments regarding denial of due process based on the ALJ's abbreviation of the hearing and failure to offer the 'live' testimony of a vocational expert.

The court may affirm, modify or reverse the Commissioner's decision with or without remand to the Commissioner for rehearing. 42 U.S.C. § 405(g). In this case, where the record itself "convincingly establishes disability and further hearings would merely delay receipt of benefits, an immediate order granting benefits without remand is appropriate." *Cline*, 939 F.2d at 569 (citing *Jefferey v. Secretary of H.H.S.*, 849 F.2d 1129, 1133 (8th Cir. 1988); *Beeler v. Bowen*, 833 F.2d 124, 127-28 (8th Cir. 1987)); *accord Thomas v. Apfel*, 22 F. Supp. 2d 996, 999 (S.D. Iowa 1998) (where claimant is unable to do any work in the national economy, remand to take additional evidence would only delay receipt of benefits to which claimant is entitled, warranting reversal with award of benefits).

Accordingly, the decision of the Commissioner is **reversed**, judgment will be entered for Davis, and this case is **remanded** pursuant to sentence four of 42 U.S.C. § 405(g), for calculation and award of benefits, with a disability onset date of January 24, 2002.

**IT IS SO ORDERED.**

**DATED** this 15th day of January, 2008.

_____
PAUL A. ZOSS
CHIEF MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT